[Cite as *State v. Thomas*, 2017-Ohio-4068.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 104480

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEONTAY THOMAS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601209-A

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 1, 2017

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road, Suite 200
Westlake, Ohio   44145


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Nathalie E. Naso
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Deontay Thomas ("Thomas"), appeals his convictions for having a weapon while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, and carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. His sole assignment of error is whether the trial court erred in denying his motion to suppress.

**{¶2}** Finding no merit to the appeal, we affirm.

## I.    The Suppression Hearing

**{¶3}** In December  2015, Thomas was indicted for having a weapon while under disability and carrying a concealed weapon. He pleaded not guilty to the charges. Thomas then moved to suppress the gun found on his person.

**{¶4}** On March 30, 2016, the trial court held a hearing on Thomas's motion to suppress. The following evidence was presented at the suppression hearing.

**{¶5}** Officer Aaron Luther ("Officer Luther") of the Cuyahoga Metropolitan Housing Authority ("CMHA") was the state's sole witness. Officer Luther testified that he had been employed with CMHA for three years and that his rank was patrolman. His daily duties were to patrol the public housing areas throughout Cuyahoga County, Ohio and to respond to calls for services in those areas.

**{¶6}** On November 14, 2015, at 6:57 p.m., an anonymous female called 911 and reported that three juvenile males, approximate ages of 13 or 14 years old, were in a parking lot with bricks in their hands "looking to do mischief." The reported location

was in the back parking lot of East 71st Street and Wade Park, Cleveland, Ohio, where the Addison high rises and family estates are located. Officer Luther testified that the area of East 71st Street and Wade Park was known to be a "rough area" that was the subject of many service calls.

{¶7} Officer Luther responded to the call and received the following dispatch narrative, "female advised the [sic] 3 juv males are in the back parking lot with bricks. 1 male blk jacket." Due to other calls, however, Officer Luther did not respond to this particular call until 7:36 p.m — approximately 40 minutes after the dispatcher received the 911 call. Officer Luther was alone in responding to the call, with the exception of two female ride-alongs.

{¶8} When Officer Luther approached the area of East 71st Street and Wade Park, he noticed an African American male who had a "hat on or something covering his head." The person he saw was Thomas. Officer Luther observed the following:

> I approached from 71st northbound to the intersection of 71st and Wade Park, which is directly parallel to our property located there, and at that time I observed a male matching the given description with either a black or — black jacket or hoodie. The male noticed my presence, began to pick up his pace.

Officer Luther testified that the significance of Thomas picking up his pace was that "more times than not it means that they are trying to avoid any contact with us."

{¶9} Officer Luther testified that Thomas "proceeded across Wade Park towards the convenience store at the intersection." Upon this observation, Officer Luther turned his vehicle around and entered the convenience store parking lot. Officer Luther said that it was dark outside, and the parking lot had poor lighting conditions. Officer Luther

testified that after he pulled into the parking lot, "[I] exited my vehicle, and asked [Thomas] if I could speak to him for a moment. He turned around and began to walk towards me and had both of his hands in his jacket. I asked him at that time for officer safety if he'd remove his hands for me, and he very easily complied." Officer Luther testified that Thomas's hands in his jacket raised a concern because "given the nature, it could be indicative of trying to conceal something."

{¶10} Officer Luther also said that Thomas "readily approached" him by walking eight to ten feet towards Officer Luther. Officer Luther asked Thomas where he was coming from and where he was going. Thomas answered that he "was coming from visiting a friend or a family member that lived in the — in the estate that he was walking out of" and that he was walking to the convenience store. Officer Luther testified that Thomas "was seemingly okay with talking to" him.

{¶11} Then, "[Officer Luther] asked if [he] could pat [Thomas] down and if he had any weapons on him, and [Thomas] quickly told [Officer Luther] that he — he did have a small caliber pistol on him." Officer Luther testified that he asked Thomas for a pat-down because of "officer safety." In response, Thomas admitted that he had a gun.

{¶12} After Thomas disclosed he had a gun, Officer Luther immediately secured him and "conducted the patdown." Officer Luther recovered a fully loaded .22 caliber revolver and a small amount of marijuana.

**{¶13}** From the dispatch log, the entire encounter between Officer Luther and Thomas took approximately 25 seconds. Officer Luther never activated his overhead lights and he never pulled out his gun.

**{¶14}** Officer Luther admitted that the only description that matched the dispatch log was that Thomas was a male wearing a black jacket. Thomas was not a juvenile — he was 33 years old with a mustache and beard. Likewise, Thomas was not with any other individuals, he had no brick in his hand, and he was not in the parking lot identified by the 911 caller.

**{¶15}** After reviewing the evidence, exhibits, and case law, the trial court denied Thomas's motion to suppress. The trial court found that Officer Luther "observed the defendant at that location in close proximity to where the caller identified the juvenile[.]" The trial court also found that Officer Luther:

> believed through the testimony that the defendant did match the description from the caller and asked the defendant to take his hands out of his pocket and asked him if he had a weapon. At that time he indicated he didn't need to pat him down, and so also in looking at the totality of the circumstances surrounding this stop, it appears to have been a consensual encounter with one police officer who did approach.

**{¶16}** After the trial court denied the motion to suppress, Thomas pleaded no contest to the indictment as charged. At sentencing, the trial court merged Count 1, having a weapon while under disability, with Count 2, carrying a concealed weapon, and imposed a sentence of two years of community control sanctions.

**{¶17}** On appeal, Thomas raises a single assignment of error:

The trial court erred in overruling appellant's motion to suppress where the search violates appellant's rights against unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution and Section 14, Article 1 of the Ohio Constitution.

## II.     Standard of Review

{¶18} A motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*   Consequently, an appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*   An appellate court, however, must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable standard.   *State v. Hill*, 8th Dist. Cuyahoga Nos. 83762 and 83775, 2005-Ohio-3155, ¶ 12.

## III.     Fourth Amendment

{¶19} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio State Constitution protect against unreasonable governmental searches and seizures.   *State v. Callan*, 8th Dist. Cuyahoga No. 95310, 2011-Ohio-2279, ¶ 15.   Warrantless searches and seizures are considered per se unreasonable, unless an exception to the warrant requirement applies.   *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶20} An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement.   *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). A *Terry* stop is a temporary detention of a person for the limited purpose of either conducting a pat-down of the outer clothing of a person suspected of being armed and dangerous, or investigating suspected criminal behavior. *Id.* at ¶ 24. While a *Terry* stop constitutes a seizure, it does not violate the Fourth Amendment as long as the officer has reasonable suspicion based on articulable facts that a person has committed or is about to commit a crime. *State v. Aufrance*, 2d Dist. Montgomery No. 21870, 2007-Ohio-2415, ¶ 14, citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

{¶21} If an officer temporarily detains a person without reasonable suspicion, then a Fourth Amendment violation has occurred. *Aufrance* at ¶ 14. If evidence is obtained as a result of an illegal Fourth Amendment search or seizure, the exclusionary rule bars that evidence from being used against a defendant at trial. *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

{¶22} The United States Supreme Court has held, however, that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry* at fn. 16. A person is not seized within the meaning of the Fourth Amendment if the police merely engage a person in a consensual encounter.

{¶23} A consensual encounter is a manner of contact initiated by a police officer for purposes of inquiry only. Consensual encounters do not require that a police officer have a reasonable suspicion of criminal activity before making the approach. *State v. Patterson*, 9th Dist. Summit No. 23135, 2006-Ohio-5424, ¶ 18, citing *Cuyahoga Falls v.*

*Sandstrom*, 9th Dist. Summit No. 17000, 1995 Ohio App. LEXIS 2624 (June 21, 1995). "[M]erely approaching an individual on the street or in another public place[,]" for the purpose of asking questions that elicit voluntary, uncoerced responses, does not violate the Fourth Amendment. *State v. Boswell,* 5th Dist. Ashland No. 13-COA-018, 2014-Ohio-886, ¶ 14, citing *United States v. Flowers*, 909 F.2d 145 (6th Cir.1990). A person approached in this manner is not required to answer any question, and may choose to end the interaction at any point or decline to engage in the interaction altogether. *Boswell* at ¶ 11.

{¶24} In *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the United States Supreme Court listed factors to consider when determining whether an individual is engaged in a consensual encounter as opposed to an investigatory detention by police. The factors include, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall* at 554. The relevant inquiry is whether, when looking at the totality of the circumstances, a reasonable person under the same circumstances would feel free to leave and end the encounter with the police. *Id.*

{¶25} We now turn to the present case to determine whether Officer Luther's stop and search of Thomas was a *Terry* stop (and if so was it supported by a reasonable, articulable suspicion) or a consensual encounter.

## IV.  Analysis

{¶26} Thomas first argues that the stop and search by Officer Luther violated his Fourth Amendment rights because the description of the "suspects" by the 911 caller was "so general and poor" that there were no grounds for an investigative *Terry* stop or search for weapons.  In support of this argument, Thomas cites to *State v. Stewart*, 8th Dist. Cuyahoga No. 95130, 2011-Ohio-2910.

{¶27} After review, we find *Stewart* inapplicable.  In *Stewart*, there was no question that a seizure of the defendant's person took place.  The issue was whether the officers had articulated sufficient facts to establish a reasonable suspicion of criminal activity, which would justify a seizure of the defendant; they did not.

{¶28} Here, we agree with Thomas that Officer Luther did not have an articulable reasonable suspicion that Thomas was involved in or about to be involved in criminal activity.  Thomas failed to meet the majority of the identifying characteristics of the suspect identified by the 911 caller (other than being a male with a black jacket). Thomas was not a juvenile, he had a mustache and beard, he did not have a brick in his hand, and he was not with any other individuals.  And when Officer Luther saw him, Thomas was not doing anything wrong or suspicious.  Thomas's reliance on *Stewart,* however, is misplaced because the issue in the present case is whether there was a seizure at all.  If there was, then we would agree with Thomas that Officer Luther violated his Fourth Amendment rights.

{¶29} Thomas then argues that the facts prove that he was not free to leave when Officer Luther asked him questions and, therefore, there was no consensual encounter. Further, Thomas claims that he did not voluntarily consent to being searched.

{¶30} In reviewing the evidence to determine whether a seizure occurred, we note that Thomas did not testify at the suppression hearing in this case. Therefore, the only evidence presented was the testimony of Officer Luther.

{¶31} Officer Luther testified that he was alone when he initially approached Thomas in the parking lot. After Officer Luther exited his vehicle, he asked Thomas if he could speak with him. Thomas turned around, walked toward Officer Luther, and told him where he was coming from and where he was going. Thomas likewise took his hands out of his pockets when asked by Officer Luther. There is no evidence that Officer Luther used a tone of voice or language indicating that Thomas must comply with his requests. Officer Luther never pulled his gun, never activated his police lights, and never maneuvered his vehicle to block Thomas. In looking at the *Mendenhall* factors, Officer Luther did not use physical force, display a weapon, touch Thomas, use any language or tone to compel Thomas's responses, or otherwise indicate that Thomas's compliance with his requests was compelled. Moreover, the entire encounter between Officer Luther and Thomas only lasted approximately 25 seconds.

{¶32} After reviewing the totality of the circumstances in this case, we conclude that Officer Luther approaching Thomas in the parking lot and asking him a few questions was not a *Terry* stop. The evidence in this case shows that Thomas voluntarily

engaged in conversation with Officer Luther and that Thomas was free to not answer any questions and was free to walk away from Officer Luther. Based on the totality of the circumstances, we find that a consensual encounter occurred between Officer Luther and Thomas.

{¶33} Then, during the consensual encounter, Officer Luther asked Thomas if he could pat him down for officer safety. In response, Thomas voluntarily admitted that he had a gun before any pat-down occurred. The request for a pat-down did not turn the encounter into a nonconsensual encounter. *State v. Greene*, 2d Dist. Montgomery No. 26138, 2015-Ohio-2060, ¶ 16. And, because Thomas voluntarily admitted to having the gun, suppression of this evidence was not warranted. *State v. Thomas*, 2d Dist. Montgomery No. 23979, 2011-Ohio-1292, ¶ 16 (motion to suppress properly denied when the defendant voluntarily relinquished contraband in response to a request for a pat-down during a consensual encounter). Therefore, the Fourth Amendment protections were not implicated during the consensual encounter that led to Thomas's admission of the gun, the pat-down search, and seizure of the gun. *State v. Smith*, 8th Dist. Cuyahoga No. 92320, 2009-Ohio-5692, ¶ 18.

{¶34} Thomas cites to *State v. Hood*, 8th Dist. Cuyahoga No. 101200, 2015-Ohio-102, in support of his argument that a consensual encounter did not occur between him and Officer Luther. In *Hood,* this court found that there was no consensual encounter because the evidence revealed that nine officers simultaneously exited four police vehicles that surrounded a group of individuals; that the nine police officers then

began to walk towards the group of individuals; and that all of the nine police officers were carrying weapons and tasers. None of these facts are present in this case and, therefore, *Hood* is distinguishable.

{¶35} We find the facts of this case more similar to those in *Greene*. There, a police officer was dispatched to a specific intersection because of a fight involving five people. The caller stated that a firearm may be present, but the caller had not seen it and did not have a description of the participants in the fight. When the officer arrived, he parked his vehicle and saw no sign of a fight. However, he looked across the street and saw the defendant "walk up towards [a] female, he saw [the officer] * * * and then walked away in a very fast pace."

{¶36} As a result, the officer in *Greene* walked across the street to the defendant and asked him, in a conversational tone, if he would mind talking to him. The officer did not use his vehicle to stop the defendant, and he did not draw his weapon. The officer then asked defendant what his name was and asked, "hey do you mind if I pat you down real quick." The officer testified that the defendant said, "sure." At the suppression hearing, the defendant denied consenting to the pat-down. While performing the pat-down, the officer recovered a "baggie with multiple gel capsules with heroin." The trial court denied defendant's motion to suppress.

{¶37} On appeal, the defendant in *Greene* argued that the interaction with the officer was a *Terry* stop, rather than a consensual encounter. He further argued that he never consented to the pat-down search. The Second District found that the officer

approached the defendant, asked if he would mind talking with him; the defendant agreed and, therefore, a consensual encounter occurred. *Greene*, 2d Dist. Montgomery No. 26138, 2015-Ohio-2060, at ¶ 15. And, as part of the consensual encounter, the court held that the officer was permitted to request a pat-down search of the defendant because there were no facts to suggest the request was coercive. *Id.* at ¶ 16.

{¶38} Based on the totality of the circumstances and the specific facts of this case, we conclude that a consensual encounter occurred between Thomas and Officer Luther. And during that consensual encounter, Thomas voluntarily disclosed the gun without coercion. Therefore, the trial court did not err in denying Thomas's motion to suppress. Thomas's assignment of error is overruled.

{¶39} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION


ANITA LASTER MAYS, J., DISSENTING:

{¶40} I respectfully dissent from the majority's opinion affirming the trial court's denial of Thomas's motion to suppress. I conclude that the facts do not support the applicable legal standard.

{¶41} Officer Luther testified that he patrolled the CMHA areas throughout Cuyahoga County, Ohio. On November 14, 2015, at 6:57 p.m., an anonymous caller reported that three juveniles, approximately 13 or 14 years old, were in the parking lots with bricks in their hands looking to do damage or breaking into vehicles. The juveniles were on the CMHA property in the area of East 71st Street and Wade Park.

{¶42} After responding to the call, Officer Luther was advised that one juvenile male was wearing a black jacket. Officer Luther did not respond immediately, due to other calls, but arrived in the particular area at 7:36 p.m. After arriving, Officer Luther stated that he "observed a male matching the given description with either a black or — black jacket or hoodie. The male noticed my presence, began to pick up his pace." Officer Luther stated that the area was not well lit. He also stated that he was in the area to see if he could find the three males that were walking around with bricks.

{¶43} Officer Luther encountered Thomas in the parking lot of a convenience store, not the lot identified in the initial call. Officer Luther called out to Thomas to inquire where he was coming from. Officer Luther asked Thomas to remove his hands

from his pocket even though it was November 14, 2015. After requesting Thomas to speak with him and for "officer safety," Officer Luther requested if he could pat Thomas down and asked if he had any weapons on his person. It was revealed that Thomas had a gun in his pocket. Thomas was then arrested.

{¶44} Officer Luther admitted that the only description that matched the dispatch log was that Thomas was a male wearing a black jacket. Thomas was a 33-year-old male with a mustache and beard, not a juvenile. Thomas was also by himself and did not have a brick in his hand. Additionally, Thomas was not in the parking lot identified to the dispatcher by the 911 caller.

{¶45} After the suppression hearing, the trial court determined that the totality of the circumstances supports that the encounter with Thomas was consensual. Therefore, Thomas's admission to possession of a weapon could not be suppressed.

{¶46} "Appellate review of the denial of a motion to suppress involves a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Therefore, when considering a trial court's denial of a motion to suppress, our standard of review is "divided into two parts." *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). In a hearing on a motion to suppress, "'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'" *Id.* at ¶ 22, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998). Deference is, therefore, given to the trial court's findings of fact related to a motion to

suppress if they are supported by competent, credible evidence. *Preztak* at ¶ 22. A reviewing court must, however, independently determine whether those facts satisfy the applicable legal standard. *State v. Martinez*, 8th Dist. Cuyahoga Nos. 103572 and 103573, 2016-Ohio-5515, ¶ 19.

{¶47} In reviewing the facts of this case, I would conclude that the facts support that there was no probable cause to even stop Thomas and, therefore, a determination of a consensual encounter could never be made.

{¶48} The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. *Terry v. Ohio*, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer must have a reasonable suspicion that a defendant has been engaged in criminal activity.

{¶49} Factors relevant in assessing reasonable suspicion include the specificity of the description of the suspect, the number of people in the area, where the person was stopped, and how long ago the crime occurred. *See United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir.2006). Even though a description is less than specific, other factors supporting the stop can exist so long as the facts known yield a limited pool of suspects. *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir.2005). *See also State v. Stewart*, 193 Ohio App.3d 716, 2011-Ohio-2910, 953 N.E.2d 886, ¶ 8 (8th Dist.).

{¶50} In this case, the description of the suspects was three juveniles, approximately 13 or 14 years old, in a parking lot, with bricks in their hands, wearing black or dark jackets. The caller reported this activity at 6:57 p.m. The officer did not respond until 7:36 p.m. Thomas is 33 years old, with a mustache and beard, was alone, and not in the parking lot the caller identified as the place of possible mischief. The description given yielded a limited pool of suspects where Thomas did not fit that description. To say that Thomas had on a black jacket or hoodie I would find was too vague to justify a stop.

{¶51} In *Stewart*, a shooting occurred in a residential neighborhood and police responded immediately. Officers were given a description of a male 5'10" to six feet tall in his late 20s or 30s in dark clothing and a female. Officers located Stewart and a female several blocks away. Officers called to Stewart and asked if he had any weapons. Stewart looked both ways but did not respond. Officers patted him down and found a weapon. Stewart was charged with carrying a concealed weapon.

{¶52} This court found that the description relayed to the officers was not specific enough to justify an investigatory stop. The description was vague and could have matched anyone in the neighborhood. *Stewart* at ¶ 9. As stated above, the description given regarding the juveniles did not come remotely close to that of Thomas. Additionally, the officer stated that Thomas began to walk faster when he noticed the officer. I would find that Thomas's movement was not justification for the officer to stop Thomas.

**{¶53}** In *Stewart*, *supra*, at ¶ 17, this court also stated,

> [T]he only other factor that arguably came into play was Stewart's act of looking both ways after being asked if he had any weapons. Even assuming that an act made in plain view of the police could be considered "furtive," furtive movements alone are insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable.

*See State v. Kessler*, 53 Ohio St.2d 204, 208, 373 N.E.2d 1252 (1978). I would conclude that because the officer stated that Thomas began walking faster when he noticed the officer was insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable.

**{¶54}** I would also conclude that once Thomas was called over to speak with Officer Luther, and asked if he could pat him down, Thomas's movement resulted in a seizure. Thomas was not free to walk away as the majority concludes. In determining whether the police contact should be viewed as a consensual encounter, which does not violate an individual's Fourth Amendment rights, or a detention that does implicate Fourth Amendment protections, the question to be asked is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889.

**{¶55}** When Officer Luther requested to speak with Thomas and then requested Thomas to remove his hands from his jacket or hoodie, I would conclude that Thomas determined that it was an order and therefore did not feel that he was free to leave.

> [C]ourts evaluating an officer's order that an individual remove his hands from his pockets have determined that a reasonable person would feel restrained by the order and would not feel free to leave, thereby resulting in a "seizure" within the language of the Fourth Amendment. *See State v. Daniel*, 81 Ohio App.3d 325, 328, 610 N.E.2d 1099 (1992); *State v. Montgomery*, 1996 Ohio App. LEXIS 2227, Montgomery App. No. 15232 (May 31, 1996), unreported.

*Richmond Hts. v. Dawson*, 8th Dist. Cuyahoga No. 71259, 1997 Ohio App. LEXIS 2543 (June 12, 1997). Considering the totality of the circumstances, I would conclude that Officer Luther's testimony did not describe suspected criminal behavior from Thomas to justify an investigative stop and once Thomas was stopped that he was seized violating his Fourth Amendment protections.

**{¶56}** Therefore, I would conclude that Officer Luther did not have probable cause to make an investigatory stop of Thomas. The officer could not justify stopping Thomas because Officer Luther arrived in the area approximately 40 minutes after the dispatched call, Thomas in no way matched the description of the juveniles, he was alone, and in a different parking lot. The fact that Thomas began to walk faster could have been for several reasons, i.e., as Officer Luther testified, "it's a pretty rough area." Additionally, the fact that Thomas had his hands in his pockets is insignificant because it was a November evening in the city of Cleveland.

**{¶57}** Therefore, I would conclude that there were no rational inferences taken from the facts given by Officer Luther to warrant an intrusion of Thomas's rights. Additionally, I would conclude that there would not be a need to make an analysis regarding a consensual encounter because the encounter should have never occurred and was illegal.