[Cite as *State v. Shern*, 2018-Ohio-5000.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27976 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1618 |
| | : | |
| JOHN P. SHERN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of December, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendant-appellant, John P. Shern, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to improperly handling a firearm in a motor vehicle and aggravated possession of drugs. In support of his appeal, Shern contends the trial court erred in failing to suppress evidence that was obtained as the result of an unlawful search and seizure. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

**{¶ 2}** On June 8, 2017, the Montgomery County Grand Jury returned an indictment charging Shern with one count of improperly handling a firearm in a motor vehicle, one count of carrying a concealed weapon, one count of aggravated possession of drugs, and three counts of possessing drug paraphernalia. Following his indictment, Shern pled not guilty to the charges and later filed a motion to suppress. In support of his motion, Shern argued that the evidence forming the basis of the charges against him was obtained as the result of an unlawful search and seizure.

**{¶ 3}** On September 8, 2017, the trial court held a hearing on Shern's motion to suppress. At the hearing, the State presented testimony from Officer William Davis of the Dayton Police Department. The State also submitted video evidence taken from Officer Davis's police cruiser. The defense presented no witnesses, but submitted video evidence taken from a police cruiser operated by another Dayton police officer, Karina Sulek. Based on Davis's testimony and the two cruiser camera videos, the trial court made the following findings of fact:

On May 20, 2017, Officers Davis and Sulek were dispatched on a juvenile complaint at the area of Indianola [Avenue] and Elmwood [Avenue], Dayton, Ohio. While at that location looking for the juveniles, the officers received another dispatch indicating that a person (anonymous) called in and indicated there was a vehicle parked in the alley behind 115 Iroquois [Avenue] and that there was screaming coming from that vehicle. The Officers responded to the alley and observed a vehicle parked and running. Officer Davis parked his vehicle parallel to the vehicle with the occupants aforementioned [sic]. State's Exhibit One and Defendant's Exhibit A, cruiser video[s], show and the Court finds that the vehicle in the alley was not blocked by any police vehicle. Officer Sulek was in a separate police cruiser and parked behind Officer Davis'[s] vehicle. Officer Davis turned his spotlight on the vehicle and approached the driver's side with his flashlight on. Given the dispatch call re[garding] screaming in the alley coming from a vehicle, Officers Davis and Sulek's objective was to determine what, if anything, was going on in regards [to] that vehicle in the alley. Officer Sulek approached the passenger. It was dark and raining. Upon approaching the driver's side, Officer Davis said to the occupants: "[L]et me see your hands." The occupants in the car complied and displayed no other movement which would have given rise to concerns for officer safety. Officer Davis focused his flashlight inside the vehicle where[in] he observed a [digital] scale with what appeared, based upon his experience, to be drug residue on the console of the vehicle.

Officer Davis asked the driver to step out of the vehicle. When the driver [Shern] step[ped] out of the vehicle, Officer Davis observed several pocket knives clipped to [Shern's] person. For safety reasons, Officer Davis patted down [Shern]; felt a baggie that he knew from his experience was contraband/narcotics. Based upon the finding of drugs on [Shern's] person, Officer Davis searched the vehicle[,] and [drug] paraphernalia and a firearm were found inside the vehicle.

Decision and Order Overruling Defendant's Motion to Suppress (Nov. 16, 2017), Montgomery County C.P. No. 2017-CR-1618, Docket No. 27, p. 1-2.

{¶ 4} In light of these findings, the trial court overruled Shern's motion to suppress. Specifically, the trial court found that Shern was not unlawfully detained by the officers and that Officer Davis's pat-down search was based on a reasonable, articulable belief that Shern was armed and dangerous. Because Officer Davis found drugs on Shern's person, the trial court also held that the officers had probable cause to search Shern's vehicle wherein the firearm and drug paraphernalia were found.

{¶ 5} After the trial court overruled his motion to suppress, Shern entered into a negotiated plea agreement with the State. As part of the plea agreement, Shern pled no contest to improperly handling a firearm in a motor vehicle and aggravated possession of drugs. In exchange for Shern's no contest plea, the State agreed to dismiss the three charges for possessing drug paraphernalia and the single charge for carrying a concealed weapon. The trial court accepted Shern's no contest plea and found him guilty of improperly handling a firearm in a motor vehicle and aggravated possession of drugs. The trial court then sentenced Shern to community control sanctions.

{¶ 6} Shern now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 7} Shern's sole assignment of error is as follows:

THE SENTENCING COURT IMPROPERLY OVERRULED DEFENDANT'S

MOTION TO SUPPRESS.

{¶ 8} Under his single assignment of error, Shern challenges the trial court's decision overruling his motion to suppress. Specifically, Shern contends the evidence obtained from his person and vehicle should have been suppressed because the officers unlawfully detained him beyond the time necessary to ensure no one was in danger at the location on Iroquois Avenue where screaming was reported. Shern also contends the pat-down search for weapons that yielded drug evidence on his person and the subsequent search of his vehicle were unlawful. We disagree.

*Standard of Review*

{¶ 9} "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *Id.*

*Shern Was Not Unlawfully Detained By Police*

**{¶ 10}** As previously noted, Shern contends that Officers Davis and Sulek unlawfully detained him beyond the time necessary to ensure no one was in danger at the location on Iroquois Avenue where screaming was reported. Shern therefore claims that he was seized in violation of his Fourth Amendment rights and that the evidence obtained as a result of the seizure should have been suppressed. We find no merit to Shern's claims.

**{¶ 11}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995). This protection, however, is not implicated in every interaction an individual has with a police officer. *State v. Schott*, 2d Dist. Darke No. 1415, 1997 WL 254141, *2 (May 16, 1997), citing *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). "The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and (3) an arrest." (Citation omitted.) *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 20 (2d Dist.).

**{¶ 12}** Consensual encounters take place when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Consensual encounters are not seizures, and the Fourth Amendment guarantees are not implicated in such an encounter. *Id*. at 747-749, citing *Mendenhall* at 554.

{¶ 13} On the other hand, an investigatory stop or detention "is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest." *Id.* at 748. During an investigatory detention, "[l]aw enforcement officers may briefly stop and/or detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot." (Citation omitted.) *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10. Unlike consensual encounters, an investigatory detention constitutes a seizure; therefore, Fourth Amendment protections are implicated in an investigatory detention. *State v. Weisgarber*, 2017-Ohio-8764, 88 N.E.3d 1037, ¶ 17 (2d Dist.); *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211, ¶ 16 (10th Dist.).

{¶ 14} "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or [was] compelled to respond to questions." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 22, citing *Mendenhall* at 553. "Factors that might indicate a seizure include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a nonpublic place, and blocking the citizen's path." *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862, 895 N.E.2d 868, ¶ 13 (2d Dist.), citing *Mendenhall*.

{¶ 15} "Whether a particular police encounter with a citizen is an investigative stop, as opposed to a consensual encounter, is fact-sensitive." (Citations omitted.) *Weisgarber* at ¶ 19. "[T]he focus is on the police officer's conduct, not the subjective

state of mind of the person stopped." *Id.* at ¶ 18, citing *State v. Ramey*, 2d Dist. Montgomery No. 26705, 2016-Ohio-607, ¶ 25.

{¶ 16} It is well established that the approach and questioning of persons seated within a parked vehicle does not constitute a seizure so as to require an officer to have a reasonable suspicion of criminal activity. *State v. Williams*, 2d Dist. Montgomery No. 23667, 2010-Ohio-4277, ¶ 26; *Schott*, 2d Dist. Darke No. 1415, 1997 WL 254141 at *3; *United States v. Castellanos*, 731 F.2d 979 (D.C. Cir.1984) (police questions of person in parked car not a seizure); *United States v. Pajari*, 715 F.2d 1378 (8th Cir.1983) (no seizure in approaching an individual in a parked car). Such an encounter does not escalate into a seizure even when police officers use a spotlight to illuminate a vehicle as they approach. *State v. Carter*, 2d Dist. Montgomery No. 19833, 2004-Ohio-454, ¶ 19-21; *State v. Green*, 2d Dist. Greene No. 2008 CA 104, 2009-Ohio-2540, ¶ 18 (holding a consensual encounter existed when a police officer pulled behind a parked vehicle in a manner that did not block the vehicle and shined a spotlight on the vehicle).

{¶ 17} In contrast, we have held that an encounter is not consensual, but a seizure, "when an officer pulls up behind a parked car, turns on * * * emergency lights, and trains his spotlight on the vehicle[.]" *Id.* at ¶ 14, citing *State v. Broom*, 2d Dist. Montgomery No. 22468, 2008-Ohio-5160, ¶ 7 and *Cosby*, 2d Dist. Montgomery No. 22293, 2008-Ohio-3862, at ¶ 15 (activation of a cruiser's overhead lights for traffic safety concerns and aiming the white spotlight of the cruiser at the pedestrian defendant constituted a nonconsensual stop). Under those circumstances we found that no reasonable person would feel free to leave. *Id.*

{¶ 18} Regarding the use of flashlights, the Seventh Circuit Court of Appeals has

held that two police officers did not seize the defendant "when they parked their car in front of his, approach[ed] him on foot from two sides, and shin[ed] their flashlights in his car." *United States v. Douglass*, 467 F.3d 621, 623-24 (7th Cir.2006). In reaching this decision, the court in *Douglass* held that "the fact that the officers used their flashlights is insignificant and certainly is not a reason that would have caused a reasonable person to feel compelled to remain for it was 2:30 a.m. in a dark parking lot." *Id.* at 624.

{¶ 19} It has also been held that an officer's directive for a driver to make his hands visible does not necessarily transform a consensual encounter into an investigatory detention/seizure. *See State v. Perryman*, 8th Dist. Cuyahoga No. 82965, 2004-Ohio-1120, ¶ 17 (the fact that defendant was asked to place his hands on the steering wheel and was not advised that he was free to leave does "not necessarily transform the initial intrusion beyond a consensual encounter").

{¶ 20} In *State v. Jordan*, 2d Dist. Montgomery No. 22271, 2008-Ohio-199, an officer approached an individual on the street, questioned him, and made multiple requests for the individual to remove his hands from his pockets. *Id.* at ¶ 3. Although the individual complied with the officer's requests, the officer observed what he believed to be a gun in the individual's pocket and thereafter ordered the defendant to raise his hands so the officer could pat him down. *Id.* Based on these facts, we held that the encounter was consensual up until the officer ordered the defendant to raise his hands. *Id.* at ¶ 12. Specifically, we held that:

> Initially, the encounter between [the officer] and [the defendant] was consensual. [The defendant] was responsive and cooperative with [the officer's] inquiries. In a *Terry* stop, a consensual encounter becomes a

seizure when, in view of all the circumstances surrounding the incident, by means of physical threat or show of authority a reasonable person would believe he was not free to leave. * * * We agree with the trial court's finding that once the officer ordered [the defendant] to put his hands up, any reasonable person would have believed he was not free to leave. At that point, the consensual encounter became a seizure.

*Id.*

{¶ 21} Notably, in *Jordan*, we did not find that the officer's initial request for the defendant to take his hands out of his pockets transformed the consensual encounter into a seizure. This supports the assertion that a seizure does not necessarily occur every time an officer requests a person to show his or her hands. For example, in *State v. Thomas*, 2017-Ohio-4068, 92 N.E.3d 93 (8th Dist.), the Eight District Court of Appeals held that an encounter was consensual even after the officer asked the defendant to take his hands out of his pockets. *Id.* at ¶ 31-32. In so holding, the court in *Thomas* noted that there was no evidence that the officer used a tone of voice or language indicating that the defendant must comply with his requests. *Id.* at ¶ 31. The court further noted that the officer never pulled his gun, never activated his police lights, and never maneuvered his vehicle to block the defendant. *Id.* The court also found it significant that the officer did not use physical force, display a weapon, touch the defendant, use any language or tone to compel the defendant's responses, or otherwise indicate that the defendant's compliance with his requests was compelled. *Id.*

{¶ 22} Several federal courts have also held that an officer's request for a defendant to make his hands visible does not transform a consensual encounter into a

seizure. *See, e.g., United States v. Preston*, 579 Fed.Appx. 495 (6th Cir.2014) (holding a consensual encounter existed under circumstances where the officer requested to see the defendant's hands in a conversational tone and asked if the defendant had any weapons without drawing his weapon, accusing the defendant of any wrongdoing, or physically touching the defendant); *United States v. De Castro*, 905 F.3d 676, 682 (3d Cir.2018) (holding that an officer's request for a defendant to remove his hands from his pockets did not constitute a seizure, noting that it was appropriate for the officer to request the defendant to remove his hands from his pockets for the safety of himself and others); *United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir.2005) (holding that an officer did not seize the defendant where, before asking him a question, "[a]ll the officer had said was take your hands out of your pockets, an obvious precaution since it was dark and an armed robber was on the loose"); *U.S. v. Gutierrez-Vargas*, D.Oregon No. CR 03-577-BR, 2005 WL 696902, *8 (Mar. 25, 2005) (holding that an officer's instruction for defendant not to hide his hands did not change the status of this contact from a consensual encounter to a seizure because the instruction was minimally intrusive and did not prevent the defendant from leaving); *Smith v. Muniz*, E.D.Cal. No. 2:15-cv-1318-TLN-EFB P, 2017 WL 5010476, *8 (Nov. 2, 2017) (holding that repeated requests to refrain from reaching into a bag did not escalate the contact into a detention).

{¶ 23} "Courts have * * * recognized that officers routinely make such requests for their own safety and not necessarily for investigative purposes." *De Castro* at 681, citing *State v. Hamilton*, 36 So.3d 209, 214 (La. 2010) (holding that police officers' "instruction to remove [the defendant's] hands from his pockets was based on concerns for officer safety and did not communicate an intent to stop, seize, or search the defendant") and

*State v. Nettles*, 70 Wash.App. 706, 712, 855 P.2d 699 (1993) (noting that "it is not unreasonable to permit a police officer in the course of an otherwise permissive encounter to ask an individual to make his hands visible").

**{¶ 24}** " 'We are sensitive to the delicate balance between Fourth Amendment rights and a police officer's safety.' " *Muniz* at *8, quoting *In re Frank V.*, 233 Cal.App.3d 1232, 1238 (1991). Requesting a person to keep his hands in sight is the least intrusive means of neutralizing a perceived danger to an officer's safety. *Id.* " 'What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.' " *Id.*, quoting *Frank V.* at 1238.

**{¶ 25}** In this case, after receiving a dispatch that reported screaming coming from a vehicle at 115 Iroquois Avenue, both Officers Davis and Sulek parked their cruisers by Shern's vehicle—the only vehicle at that location. Contrary to Shern's claim otherwise, the record supports the trial court's finding that the officers did not park their cruisers in a manner that blocked Shern's vehicle. The officers also did not activate the overhead lights on their cruisers or draw their weapons when they approached Shern. Instead, the officers shined a spotlight at Shern's vehicle because it was dark and raining outside. As previously discussed, shining a spotlight at a vehicle does not convert a consensual encounter into an investigatory detention/seizure.

**{¶ 26}** Officer Davis also shined his handheld flashlight inside the vehicle and requested to see the occupants' hands for purposes of officer safety. In making this request, Officer Davis simply stated "let me see your hands real quick." Hearing Trans. (Sept. 8, 2017), p. 20. At the time Officer Davis made this request, he did not have his weapon drawn nor did he ever physically touch Shern. Furthermore, nothing in the

record indicates that Davis made the request in a tone that would have made a reasonable person feel as though his or her liberty was restrained. This is supported by Officer Davis's testimony that Shern freely placed his hands on the steering wheel without instruction after briefly raising them. *Id.*

{¶ 27} Based on the totality of the circumstances, we find that Officer Davis's brief request to see Shern's hands while shining a flashlight at him was not made in a manner that exhibited a show of authority, but rather, in a manner that exhibited Officer Davis's concern for his own safety. Therefore, we cannot say that Officer Davis's request would have made a reasonable person in Shern's position feel as though he was not free to leave so as to transform the encounter into an investigatory detention/seizure. Rather, the trial court's findings of fact, which are supported by the record, reflect that Shern was subject to a consensual encounter up until Officer Davis ordered Shern out of his vehicle after observing a digital scale covered with a white powder residue in plain view on the center console of Shern's vehicle.

{¶ 28} In so holding, we note that Officer Davis testified that, based on his training and police experience, the residue-covered scale "signified drug abuse or drug use." Hearing Trans. (Sept. 8, 2017), p. 10. Officer Davis explained that there have been "countless times" that he has seen scales used for measuring drugs during their purchase and distribution. *Id.* at 10-11. Based on his observation of the residue-covered scale in the center console of Shern's vehicle, we find that Officer Davis had a reasonable, articulable suspicion that Shern was engaged in criminal activity. Therefore, because he had a reasonable, articulable suspicion that Shern was engaged in criminal activity, Officer Davis was constitutionally permitted to order Shern out of his vehicle and to detain

him for further investigation. *Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738 at ¶ 10; *State v. Wolfe*, 5th Dist. Licking No. 10-CA-28, 2011-Ohio-195, ¶ 18 (an officer with a reasonable, articulable suspicion that criminal activity was occurring was justified in asking motorist to step from the vehicle during investigatory stop).

**{¶ 29}** For the foregoing reasons, Shern's claim that he was unlawfully detained lacks merit.

*The Pat-Down Search and Subsequent Search of Shern's Vehicle Was Lawful*

**{¶ 30}** Shern also contends the pat-down search for weapons that yielded drug evidence on his person and the subsequent search of his vehicle were unlawful. We again disagree.

**{¶ 31}** When an individual is lawfully detained, an officer may conduct a limited search for weapons if the officer reasonably believes the suspect may be armed and dangerous. (Citations omitted.) *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). To justify a pat-down search, an officer must point to specific, articulable facts that create a "reasonable individualized suspicion that the suspect is armed and dangerous[.]" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18, citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (Other citations omitted.)

**{¶ 32}** "[T]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Citations and footnote omitted.) *Terry* at 27. The existence of reasonable suspicion is determined by

evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 33} The Tenth Circuit Court of Appeals held that a pat-down search was justified when a stopped driver informed the officer he had a knife in his belt. *United States v. Mikulski*, 317 F.3d 1228, 1234-1235 (10th Cir.2003). The Fifth Circuit Court of Appeals held that a pat-down search was justified under circumstances where an officer observed a pocket knife clipped to the defendant during a stop conducted in a high-crime neighborhood. *United States v. Wiley*, 493 Fed.Appx. 481, 482-483 (5th Cir.2012). The Ninth Circuit Court of Appeals also observed that "[t]he possibility of a surprise attack at close quarters with even a small knife presents danger sufficient to justify an officer in taking reasonable protective measures[.]"

{¶ 34} In this case, Officer Davis not only had a reasonable suspicion that Shern was engaged in illegal drug activity due to observing the residue-covered scale, but Davis also observed that Shern had two folding knives clipped to his pocket when Shern exited his vehicle. Officer Davis testified that he performed the pat-down search because Shern's knives could have been used to hurt him. Given the suspicion of drug activity and the knives observed on Shern's person, we find that it was reasonable for Davis to believe his safety may have been in danger. Therefore, when considering the facts and circumstances in this case, we find the pat-down search was justified.

{¶ 35} We also find that Officer Davis had probable cause to search Shern's vehicle. "Probable cause is determined by examining the historical facts, such as the

events leading up to a stop or search, as viewed from the standpoint of an objectively reasonable police officer." *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 34, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 850 N.E.2d 698, 2006-Ohio-3563, ¶ 14. "The determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search." *Id.* "Probable cause sufficient to justify a search exists where, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*, citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 36} Here, prior to the search of Shern's vehicle, Officer Davis observed a digital scale covered with suspected drug residue on the center console of Shern's vehicle. Officer Davis also observed knives on Shern's person and found drugs inside Shern's pocket following the pat-down search. Furthermore, Officer Davis testified that Shern "became very—very nervous" during the encounter and that "[h]is hands were shaking." Hearing Trans. (Sept. 8, 2017), p. 11. Based on the totality of these circumstances, we find that an objectively reasonable officer would have believed there was a fair probability that contraband or evidence of a crime would be found inside Shern's vehicle. Therefore, we find the subsequent search of Shern's vehicle was based on probable cause and thus lawful.

{¶ 37} For the foregoing reasons, Shern's claim that the pat-down search and the subsequent search of his vehicle were unlawful lacks merit.

**Conclusion**

{¶ 38} Because all of Shern's claims lack merit, his sole assignment of error is overruled. Having overruled Shern's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Charles W. Slicer, III
Hon. Richard Skelton