[Cite as *State v. Hammer*, 2012-Ohio-3497.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2012-CA-2 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 12-CR-09 |
| v. | : | |
| | : | (Criminal Appeal from |
| DORA J. HAMMER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2012.

. . . . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. #0020615, and DEBORAH S. QUIGLEY, Atty. Reg.
#0055455, Darke County Prosecutor's Office, Darke County Courthouse, Third Floor, 504
South Broadway, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellant

RANDALL E. BREADEN, Atty. Reg. #0011453, Law Office of Randall E. Breaden, LLC,
414 Walnut Street, Greenville, Ohio 45331
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

FAIN, J.

        {¶ 1}    Plaintiff-appellant the State of Ohio appeals from an order suppressing

evidence of an assault against a police officer, after that officer had entered the home where

defendant-appellee Dora J. Hammer then was, without consent, and without a warrant. The trial court found that there were no exigent circumstances justifying the warrantless entry, and suppressed the evidence of the assault, consisting of "the officer's observations (sight and hearing)."

{¶ 2} We conclude that even if the police officer's entry into the home was unlawful, the exclusionary rule does not apply in this case. Where evidence is obtained as the result of an unlawful search and seizure, the exclusionary rule requires the suppression of that evidence. But the analysis is one of proximate cause or result, not a "but for" test. Here, the police officer's first-hand observation of himself being assaulted by Hammer was not a proximate result of his allegedly unlawful entry into the home; it was the proximate result of Hammer's voluntary act of assaulting the officer, which broke the chain of proximate causation stemming from the officer's entry into the home.

{¶ 3} The trial court erred when it suppressed the evidence. The order of suppression is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

### I. Police Officer Ater Responds to a 9-1-1 Report of a Person "Overdosed on Pills and Extremely Intoxicated," Enters the Home Without Consent and Without a Warrant, and Is Assaulted

{¶ 4} Union City Police Officer Mark Ater was on duty between 11:00 and 11:30 p.m. in mid-January, 2012, when he was dispatched to Hammer's home. The report was that the Darke County Sheriff's Department had "received a 9-1-1 call that there was a

female that had overdosed on pills and that was extremely intoxicated acting belligerent."

{¶ 5} When Ater responded to the home within not more than five minutes, the "heavy door" was open, and he could see through the storm door Hammer's mother and another male occupant, who identified himself at the suppression hearing as Hammer's husband. Ater spoke to Hammer's mother, who told him, "she's in here. She had taken an unknown amount of drugs." At this point, Ater entered the home. He had neither consent, nor a warrant.

{¶ 6} After Ater entered the home, Hammer's mother told him, "my daughter's out of hand." Hammer was sitting in a chair right beside the door, but it was turned in such a way that Ater could not initially see who was sitting there. Ater did not see any fighting or belligerent conduct.

{¶ 7} Ater testified that when he did see Hammer sitting there, she was "obviously overdosed on medication and intoxicated," but was not comatose, and was not having difficulty breathing. He thought she was in danger because "[s]he took an unknown amount of prescription drugs and mixed it with alcohol."

{¶ 8} Emergency medical technicians had also been summoned, but had not yet arrived when Ater responded to the scene. Ater testified that he had a policy, or the Police Department had a policy, that a law enforcement officer would first determine that the scene was safe for the emergency medical technicians before they would then enter.

{¶ 9} Concerning what happened next, Ater testified as follows:

I found the Defendant sitting on a – like a chair in the living room obviously intoxicated. The odor that was emitting from her and the behavior that she had and the

language she was using, the way she was acting, that she was intoxicated [sic].

I was speaking with her and asking her what was going on and she continued to yell obscenities and became belligerent with me. I asked her what was going on and she wouldn't answer what she was doing. I asked her mom what had happened and she said that she had taken an unknown amount of prescription drugs over what was prescribed to her and she'd been drink [sic] alcohol.

So I asked Miss Hammer if she needed to speak with a medic. She told me that she didn't need anything from me and it continued on and on. While she was doing that –

[Whereupon the interrogation moved to other subjects.]

{¶ 10} The above-quoted passage is the only part of Ater's testimony that is addressed to his interaction with Hammer.

## II. The Course of Proceedings

{¶ 11} Hammer was charged by indictment with "knowingly caus[ing] or attempt[ing] to cause physical harm to another and that person was a peace officer while in the performance of his duties," in violation of R.C. 2903.13(A), (C)(3), Assault, a felony of the fourth degree.

{¶ 12} Hammer moved to suppress "all evidence obtained * * * from the warrantless entry, arrest, search and seizure of the Defendant in her residence." The trial court found no exigent circumstances to justify the entry into Hammer's residence, and suppressed the evidence: "Since no tangible items were seized, there are none to suppress. However, the officer's observations (sight and hearing) were improperly obtained. As such, his observations are inadmissible herein."

**{¶ 13}**   From the order suppressing evidence, the State appeals.

**{¶ 14}**   In its initial brief, the State's sole assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS AND FOUND THAT EMERGENCY AID EXCEPTION DID NOT EXIST FOR A POLICE OFFICER TO ENTER THE HOME AFTER A 911 CALL WAS MADE REQUESTING ASSISTANCE FOR A POSSIBLE OVERDOSE AND EXTREMELY INTOXICATED, BELLIGERENT FEMALE.

**{¶ 15}**   The actual error assigned by the State is the trial court's order suppressing evidence.   The balance of its stated assignment of error consists of an argument that the suppression order was erroneous.

**{¶ 16}**   In their initial briefs, the State and Hammer argued whether the emergency aid exception permitted the warrantless entry into Hammer's home.   During our review of the merits of this appeal, we became aware of another, potentially dispositive issue that the parties had not addressed.   By entry filed herein on June 26, 2012, we identified that issue as follows: "The issue is whether Officer Ater's observation of himself being assaulted by Hammer (the evidence suppressed) was a proximate result of his unlawful entry, i.e., 'the fruit of the poisonous tree.'   Or was that evidence a remote result of his unlawful entry, in view of Hammer's independent, subsequent act of assaulting him?"   We directed the parties to file simultaneous supplemental briefs on that issue, and they have done so.

**{¶ 17}**   In the State's supplemental brief, it has set forth a Supplemental Assignment of Error, as follows:

THE COURT ERRED WHEN IT GRANTED APPELLANT'S MOTION TO

SUPPRESS WHEN APPELLANT'S ACT OF ASSAULTING THE OFFICER WAS AN INDEPENDENT ACT AND THE OFFICER'S OBSERVATIONS OF THE ASSAULT WERE NOT DERIVATIVE EVIDENCE THAT WAS SUBJECT TO SUPPRESSION.

{¶ 18} We did not expressly invite the State to file a supplemental assignment of error, and the State has not requested leave to do so. Nevertheless, by virtue of our entry of June 26, 2012, Hammer has had an opportunity to file, and has in fact filed, a supplemental brief addressed to the State's supplemental assignment of error, which raises, of course, essentially the same issue raised in our June 26, 2012 entry. Therefore, Hammer is not prejudiced by the State's Supplemental Assignment of Error, which we accordingly accept.

**III.  Officer Ater's Observation of Himself Being Assaulted by Hammer Is Not Evidence Derived from his Allegedly Unlawful Entry Into Hammer's Home**

{¶ 19} As the State notes in its brief, Ohio courts of appeals, including this one, have held that evidence of a fresh crime committed during or after an unlawful search and seizure is not properly regarded as deriving from the unlawful search and seizure; that evidence instead derives from the defendant's intervening voluntary criminal act. *State v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019, ¶ 18 (7th Dist.); *State v. Cammon,* 8th Dist. Cuyahoga No. 91574, 2009-Ohio-4706, ¶ 27-28; *State v. Freeman*, 2d Dist. Montgomery No. 18798, 2002-Ohio-918, ¶ 22.

{¶ 20} "Application of the exclusionary rule is generally restricted to those areas

where its remedial objectives are most efficaciously served. *See U.S. v. Leon*, [468 U.S. 897, 104 S.Ct. 3405, 82 L.E.2d 677 (1984)]. It does not serve those objectives, which are to discourage illegal searches and seizures by police, when evidence of criminal misconduct that occurs separate and apart from the illegal police conduct is suppressed." *State v. Freeman*, *supra*, at ¶ 18.

{¶ 21} Indeed, when the criminal act occurring during an unlawful search and seizure is an assault upon the police officer, there are strong considerations countervailing the purposes behind the exclusionary rule:

To exclude the evidence of [the seized person's] separate, independent and distinct criminal conduct would do little to further the purpose of the exclusionary rule in deterring unlawful police conduct, and would sanction the use of assaultive behavior in response to an illegal arrest or seizure. Such a result is patently unacceptable inasmuch as a citizen, in the absence of excessive force, is not privileged to use force in order to repel an arrest by a police officer, even an illegal one. *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 324 N.E.2d 735. One caveat; if the police officer intentionally provokes the illegal conduct on the part of the citizen, then a different result may obtain. *State v. Freeman, supra*, at ¶ 20.

{¶ 22} For cases in accord, see 6 Wayne R. LaFave, *Search and Seizure*, Section 11.4(j), at 375-378 (4th Ed. 2004).

{¶ 23} In her supplemental brief, Hammer argues that we cannot determine, from this record, whether she caused Ater physical harm, or attempted to cause him physical harm. Therefore, she argues, the authorities indicating that the exclusionary rule does not apply to

evidence of an assault upon a police officer during the officer's unlawful entry are not applicable to her case.

{¶ 24} The problem with Hammer's argument is that she is charged with Assault Upon a Peace Officer. Ater's observations of Hammer's acts giving rise to that charge may or may not satisfy the trier of fact of Hammer's guilt, beyond reasonable doubt, but they are nevertheless evidence of the alleged Assault. That is the only relevance that Ater's observations would have at Hammer's Assault trial. Although it is true that we do not know what Ater's testimony at Hammer's Assault trial would be, we do know that his testimony would be evidence of the alleged Assault, in the sense that it would be offered as proof of that charge.

{¶ 25} The State's Supplemental Assignment of Error is sustained.

{¶ 26} In view of our disposition of the State's Supplemental Assignment of Error, we find it unnecessary to decide the State's original assignment of error – that is, whether the emergency aid exception to the requirement of a warrant applies in this case.

## IV. Conclusion

{¶ 27} The State's Supplemental Assignment of Error having been sustained, the order suppressing evidence, from which this appeal is taken, is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

FROELICH and WILLAMOWSKI, JJ., concur.

(Hon. John R. Willamowski, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

R. Kelly Ormsby, III
Deborah S. Quigley
Randall E. Breaden
Hon. Jonathan P. Hein