[Cite as *State v. Morrow*, 2020-Ohio-3390.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28441 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3983 |
| | : | |
| ANTOINE LAMAR MORROW | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of June, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020 and CATHERINE H. BREAULT, Atty. Reg. No. 0098433, 130 West Second Street, Suite 2150, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Antoine Lamar Morrow, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to five counts of having weapons while under disability. In support of his appeal, Morrow challenges the trial court's denial of his motion to suppress evidence seized from his residence. For the reasons outlined below, the judgment of the trial court will be affirmed.

## I.     Facts and Course of Proceedings

{¶ 2} In the evening hours of October 12, 2018, Dayton Police Officers Clinton Evans and Steven Ettinger were en route to investigate a reported argument between people in an alleyway near an apartment building at 603 Rockford Avenue. A woman flagged down the officers and led them to the building.

{¶ 3} Upon arrival, the woman informed the officers that her husband's company vehicle had broken down in an alley adjoining an apartment building on Rockford Avenue. At some point, a man emerged from the front door of the apartment building and began yelling at them to move the vehicle. When she told the man the vehicle was inoperable, he threatened her and her husband with a knife and slashed the vehicle's tires. The woman identified the assailant as an African-American male wearing a white t-shirt and blue jeans. The couple left to seek help from the police, and the assailant re-entered the apartment building through the front door.

{¶ 4} The officers went to the parking lot on the other side of the building to investigate. There they found the company vehicle with four flattened tires. Officer Ettinger noticed lights on in the upstairs apartment. He could make out the shadow of a figure traversing the room behind the blind-drawn windows. The unit was later determined

to be apartment 3.

{¶ 5} The officers attempted to gain entry though the building's front entrance, but found it to be secured. Eventually, a female resident heard the officers' knocking and came to the front door. The officers informed her they were investigating an incident that occurred in the parking lot. The resident indicated she was the anonymous caller who had heard the argument in the alley and summoned the police. She did not know anyone who matched the description of the knife-wielding man, but offered that someone had recently moved into apartment 3 upstairs. The officers asked if they could enter the building to continue their investigation. The female resident unlocked the front door and allowed them to enter.

{¶ 6} The officers ascended the stairs toward apartment 3. Officer Ettinger maintained a position at the first landing, while Officer Evans proceeded to the second landing, where apartment 3's front door was located. Evans could hear someone speaking inside the apartment, but could not tell whether the man was addressing someone on the phone or in the apartment.

{¶ 7} Officer Evans knocked on the front door. A male voice responded, "Who the f*ck is at my door?" The officer replied, "It's the Dayton Police." Ten to fifteen seconds of silence elapsed, after which the man inside repeated, "Who the f*ck is it?" Officer Evans replied, "It's the Dayton Police." The same exchange took place five or six times. The final time, an increasingly-frustrated Officer Evans replied, "It is the f*cking police, open the door." At that moment, the door abruptly opened and an African-American man in a white t-shirt stood pointing a black handgun at Officer Evans's head. That man was Morrow.

{¶ 8} Officer Evans took a backward step and drew his service weapon, firing three

times. He could no longer see Morrow standing in the open doorway, but could not tell whether the man had been shot. Evans advanced toward the apartment and peered inside. He saw Morrow lying on the floor with his back to the door.

{¶ 9} Officer Evans ordered Morrow to show his hands. Morrow said he had been shot and could not move his hands; he expressed his belief that he was going to die. Officer Evans indicated his desire to help but emphasized that he needed to confirm Morrow was no longer armed before entering. Morrow weakly raised each hand. Due to the positioning of his body, however, Officer Evans could not tell whether he was concealing a gun or whether the handgun he had been holding was within reach. Officer Ettinger radioed for a medic.

{¶ 10} Other officers arrived on scene. At Officer Evans's direction, they breached Morrow's apartment through a separate entrance. The officers confirmed that they did not see a gun near Morrow, at which point Evans entered though the front door. He testified that his purpose in entering the apartment at that point was to render aid to Morrow, as per standard policy. Evans observed a black handgun laying on the ground next to the doorframe at the front entrance to the apartment.

{¶ 11} Morrow sustained a gunshot wound to the torso, just below the sternum. He was transported to a hospital for treatment. Thereafter, Dayton Police obtained a warrant to search Morrow's apartment. Items seized included a Hi-Point 9mm pistol, a shell casing found near the doorway, a copper bullet jacket, a knife, cell phones, clothing, and marijuana. (State's Exhibit 6 at Inventory).

{¶ 12} On October 22, 2018, a Montgomery County grand jury levied five charges of having weapons while under disability against Morrow. He initially entered a not guilty

plea and moved to suppress the evidence seized in connection with the incident. Following a hearing, the court afforded the parties time to brief the issue of whether Officer Evans's order to Morrow to open his door was unlawful, requiring suppression of the evidence subsequently seized from the apartment.

{¶ 13} The parties submitted their briefs. In a written decision issued on March 18, 2019, the trial court denied Morrow's motion to suppress. Thereafter, Morrow pled no contest to all five counts in the indictment. At sentencing, the court noted that Morrow should be going to prison. Nonetheless, the court agreed with the recommendation in the presentence investigation report that Morrow be sentenced to community control. The court's May 31, 2019 judgment entry reflects this disposition, sentencing Morrow to community control sanctions for a period of time not to exceed five years. Morrow appeals.

## II.     Suppression of Evidence Seized from Apartment

{¶ 14} In a single assignment of error, Morrow contends that the trial court erred in denying his motion to suppress. Our review of the facts and circumstances of the case reveals otherwise.

### *Standard of Review*

{¶ 15} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-

Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

### *The Initial Encounter with Morrow Was Lawful*

{¶ 16} We begin by reviewing a number of deeply-rooted principles of search and seizure jurisprudence. An individual's right to be free from unreasonable searches and seizures is protected by the Fourth Amendment to the United States Constitution as well as Article I, Section 14 of the Ohio Constitution. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 476, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

{¶ 17} "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." (Citations omitted.) *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000). "If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." (Citations omitted.) *Id.*

{¶ 18} Generally speaking, the reasonableness of a search or seizure is dependent upon the facts and circumstances of each case. *Leak* at ¶ 13. This

reasonableness assessment "is measured in objective terms by examining the totality of the circumstances." *Id.*, quoting *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

{¶ 19} The aforementioned Fourth Amendment protections are not implicated in every interaction between police and civilians. *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995), citing *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) and *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Rather, "[t]he United States Supreme Court has created three categories of police-citizen contact to identify the situations where these guarantees are implicated." *Id.*, citing *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). These include: (1) consensual encounters; (2) investigatory detentions; and (3) seizures in the nature of an arrest. *Retherford* at 594-595; *Taylor* at 747-749.

{¶ 20} Turning to the case at hand, we begin by acknowledging that Officers Evans and Ettinger acted lawfully in entering the apartment building on Rockford Avenue. It became necessary for the officers to make contact with the building residents to further the investigation into the aggravated menacing and criminal damaging allegations. The first-floor female resident unlocked the front door and permitted the officers to enter the building's common area to continue their investigation. Morrow does not argue that these events violated his constitutional rights.

{¶ 21} Morrow's challenge concerns the officers' actions at the entrance to his second-floor apartment. According to Morrow, the officers failed to establish a viable connection between him and the allegations so as to justify ordering him to open his apartment door. He points to the scant descriptive details provided by the woman in the

parking lot regarding her assailant, and the fact that the first-floor resident did not corroborate the woman's vague identification. Instead, the resident offered that a new person had moved in upstairs. Morrow maintains that these facts were insufficient to justify the officers' infringement upon his right to privacy inside his home.

{¶ 22} We agree with the trial court that the initial interaction between Officer Evans and Morrow at the front door to Morrow's apartment started off as a "knock and advise." A number of courts, including this one, have recognized this type of consensual encounter as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation. *State v. Miller*, 2d Dist. Montgomery No. 24609, 2012-Ohio-5206, ¶ 16. A police officer need not possess reasonable suspicion in order to justify a "knock and advise." *United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir.2000).

{¶ 23} Like any other consensual encounter, the Fourth Amendment's protections are not implicated by a typical "knock and advise." *Miller* at ¶ 15. However, such an encounter can become coercive where an officer asserts his authority, refuses to leave, or otherwise makes the inhabitant feel he cannot refuse to open the door. *Id.* at ¶ 16, citing *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir.2006). That is what happened here. When Officer Evans knocked and announced his presence, Morrow was under no obligation to open his door and, in fact, did not. Once Officer Evans ordered Morrow to open the door, however, the interaction shifted.

{¶ 24} Where a law enforcement officer conveys the impression that compliance with his request is mandatory, the encounter can no longer be deemed consensual. *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211, ¶ 15 (10th Dist.), quoting *Florida v. Bostick*,

501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). *Accord State v. Ward*, 2017-Ohio-1391, 89 N.E.3d 124, ¶ 26 (2d Dist.). At this point, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Bostick* at 437, quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

**{¶ 25}** We agree with the trial court's assessment that the encounter between Officer Evans and Morrow lost its consensual air when the officer ordered Morrow to open his door. The officer testified that his experiences both as a correction officer and a police officer taught him that using stern language is sometimes necessary to accomplish a goal. The officer's continued presence at the door, combined with his harsh tone and strong language, operated to assert his authority in a manner that would have made a reasonable person feel they were obligated to obey. At that point, the encounter rose to the level of an investigatory detention.

**{¶ 26}** "Unlike consensual encounters, an investigatory detention constitutes a seizure; therefore, Fourth Amendment protections are implicated in an investigatory detention." (Citations omitted.) *State v. Shern*, 2018-Ohio-5000, 126 N.E.3d 322, ¶ 13 (2d Dist.). "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or [was] compelled to respond to questions." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 22, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶ 27}** During investigatory detentions like the one at issue, "police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot[.]" *State v. Swift*, 2d Dist. Montgomery No. 27036, 2016-Ohio-8191, ¶ 10, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (Other citations omitted.) Whether an officer possesses reasonable suspicion is determined by evaluating the totality of the circumstances, which must be considered "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This 'typically requires [a showing] that the officer making the stop was [personally] aware of sufficient facts to justify it[.]' " *State v. Pickett*, 2017-Ohio-5830, 94 N.E.3d 1046, ¶ 9 (2d Dist.), quoting *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999).

**{¶ 28}** Although the encounter in this case took on a coercive tone, Officer Evans was justified in ordering Morrow to open the door under the circumstances. The officers were responding to a reported disturbance outside the building. At the scene, they spoke to a woman who indicated she had been threatened by an African-American man clad in a white t-shirt and blue jeans. She indicated the man came in and out of the apartment building in question. The first-floor resident who had anonymously phoned 911 said she did not know of a resident matching the description given by the woman, but offered that a new tenant had moved in upstairs. In other words, none of the other residents known to her matched that description, but the new tenant might. Based upon the information provided by these two witnesses, the police reasonably suspected Morrow was either a

suspect or a witness in need of questioning. Evans's order to open the door was a reasonable request in furtherance of this investigation as contemplated by *Terry v. Ohio*.

{¶ 29} Even if we had found that Officer Evans's order to open the door was unlawful, we note that Morrow's action of pointing a firearm at the officer constituted a separate and distinct criminal offense. This court has declined to sanction the suppression of fruits of an illegal search where the defendant engaged in criminal conduct comprising an offense wholly separate from the one prompting an investigation. *State v. Hammer*, 2d Dist. Darke No. 2012-CA-2, 2012-Ohio-3497, ¶ 2 (defendant's voluntary act of assaulting police officer broke the chain of proximate causation stemming from the officer's unlawful entry into his home). *Accord State v. Freeman*, 2d Dist. Montgomery No. 18798, 2002-Ohio-918 (where defendant engaged in criminal conduct comprising offenses wholly separate from the offense police were investigating, evidence seized thereafter was not subject to exclusion). *See also State v. Kelly*, 2d Dist. Clark No. 3007, 1993 WL 402769, *5 (Sept. 24, 1993) (excluding evidence of volitional criminal conduct that is independent of an illegal search or seizure would not advance the purpose of the exclusionary rule in deterring unlawful police conduct, and in fact may encourage the use of assaultive behavior in response to an illegal search or seizure). Consequently, even had Evans not been justified in engaging Morrow in an investigatory detention, Morrow's volitional act of pointing a gun at the officer constituted a separate offense which obviated the need for suppression of the fruits of the illegal detention.

*The Entry into Morrow's Apartment Was Lawful*

{¶ 30} Next, Morrow asserts that the officers' warrantless entry into his apartment

was not justified by any exigent circumstances. In particular, he argues that the officers' investigation into the misdemeanor offenses of aggravated menacing and criminal damaging did not justify the warrantless entry into his home. Morrow concludes that the drug and firearms evidence seized in conjunction with the officers' unlawful entry into his apartment should have been suppressed.

{¶ 31} The Ohio Supreme Court has expressly recognized a limited number of exceptions to the warrant requirement, one of which is the presence of exigent circumstances. *State v. Peck*, 2d Dist. Montgomery No. 25999, 2014-Ohio-2820, ¶ 8, citing *State v. Price*, 134 Ohio App.3d 464, 467, 731 N.E.2d 280 (9th Dist.1999) (surveying Ohio Supreme Court case law). "It is well recognized that police may enter a home without a warrant where they have probable cause to search and exigent circumstances exist justifying the entry." *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 20, quoting *State v. Carr*, 2d Dist. Montgomery No. 19121, 2002-Ohio-4201, ¶ 15. (Other citation omitted.)

{¶ 32} The exigent-circumstances exception "is founded on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant." (Citation omitted.) *State v. Cheadle*, 2d Dist. Miami No. 00CA03, 2000 WL 966167, *2 (July 14, 2000). "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184, 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990).

{¶ 33} Morrow's contention that the exigent circumstances exception is

inapplicable to this case misses the mark. The officers who breached the apartment through a side door were lawfully permitted to do so. Morrow's act of pointing a gun at Officer Evans and the events that followed gave rise to the exigency justifying entry into the apartment. *See State v. Barber*, 2d Dist. Montgomery No. 19017, 2002-Ohio-3278 (while exigency resulted from investigative conduct of officers, it was defendant's voluntary conduct of backing into the apartment and reaching behind his back with his hand that created a reasonable suspicion he was armed and posed a danger to the safety of the officers that justified the officers' entry); *State v. Burchett*, 2d Dist. Montgomery No. 20166, 2004-Ohio-3095, ¶ 22 (officers did not create exigent circumstances by knocking on door without identifying themselves as police).

**{¶ 34}** A civilian's act of pointing a firearm at a police officer is not a minor offense. *Compare Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (exigent circumstances exception did not justify warrantless entry into suspect's home where officers had probable cause to believe suspect had committed only a minor offense). Nor are we prepared to say that the offenses of aggravated menacing and criminal damaging constitute "minor offenses" precluding the application of the exigent circumstances exception to warrantless home entries in every instance. *See State v. Striks*, 2015-Ohio-1401, 31 N.E.3d 208, ¶ 20 (2d Dist.) (noting that, "[w]hile *Welsh* expresses concern about extending the exigent-circumstances exception to 'minor offenses,' it did not define the term and also declined to consider whether the Fourth Amendment imposes an absolute ban on warrantless home entries for certain minor offenses.").

**{¶ 35}** Of note, Officer Evans testified that he could not see whether Morrow was

still armed from his vantage point outside the front door of the apartment. The officers had to enter the residence to secure Morrow's weapon and safely provide him with medical assistance. One of the well-established emergency circumstances concerns "when entry into a building is necessary to protect or preserve life[.]" *See State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 13. Morrow had been shot and, indeed, expressed to Officer Evans his belief that he was dying. It was imperative that the officers confirm Morrow was no longer armed before entering to render life-saving aid.

{¶ 36} The final consideration supporting application of the exigent circumstances exception concerns the existence of probable cause. Although not implicated by the indictment in this the cas, Morrow's act of pointing a firearm at a police officer supported a charge of felonious assault. The officers thus had probable cause to enter the apartment without a warrant after Morrow engaged in this criminal conduct.

*Seizure of Evidence Pursuant to Search Warrant Was Lawful*

{¶ 37} As indicated, Dayton Police obtained a warrant prior to searching Morrow's apartment. Morrow does not directly challenge the lawfulness of the search warrant. Nonetheless, because the evidence he seeks to suppress was ultimately seized as a result of the warrant, we shall briefly review its propriety.

{¶ 38} At the suppression hearing, the State submitted a certified copy of the warrant as an exhibit. The parties stipulated that the court was to conduct a four corners review of the warrant, and that no further testimony was necessary to introduce or explain the document. The warrant sought to secure firearms, ammunition, knives, marijuana and drug paraphernalia, and clothing described by the victim of the aggravated menacing and

criminal damaging offenses.

{¶ 39} The affidavit accompanying the warrant described the factual events underlying this case. The affidavit further indicated that the officers observed a clear plastic bag containing other clear baggies filled with suspected marijuana in plain view on the kitchen counter during a protective sweep of the apartment. This observation, in conjunction with the shooting and the circumstances surrounding it, afforded probable cause sufficient to support the issuance of the search warrant. Accordingly, the trial court properly refused to suppress the evidence seized pursuant to the warrant.

{¶ 40} For the foregoing reasons, Morrow's assignment of error is overruled.

### III.     Conclusion

{¶ 41} Having overruled Morrow's sole assignment of error, the judgment of the trial court is hereby affirmed.

. . . . . . . . . . . .

TUCKER, P.J. concurs:

{¶ 42} I concur because, as stated in the majority opinion, by pointing a handgun at Evans, Morrow engaged in criminal conduct separate and distinct from the incident Evans had been investigating.   The seizure of the weapons at issue did not result from Evans's demand that Morrow open the apartment door, but, instead, from Morrow's decision to point the handgun at Evans.   *See State v. Hammer*, 2d Dist. Darke No. 2012-CA-2, 2012-Ohio-3497, ¶ 19 (assuming an illegal entry, evidence seized as a result of separate criminal conduct "derives from the defendant's intervening voluntary criminal

act").

{¶ 43} I write separately to state that while I agree there was a reasonable suspicion that Morrow had committed the criminal conduct being investigated, such reasonable suspicion did not sanction Evans's coercive demand that Morrow open the apartment door.

{¶ 44} When, as here, an officer commands that a residential door be opened in a manner which conveys to an occupant that his "only choice [is] to acquiesce[,]" the resulting encounter constitutes a Fourth Amendment seizure. *State v. Miller*, 2012-Ohio-5206, 982 N.E.2d 739, ¶ 21 (2d Dist.). Such a seizure occurs when the occupant is within the home and the officer is within the home's curtilage ("the area 'immediately surrounding the home' "), which is part of the home itself for Fourth Amendment purposes. *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

{¶ 45} Thus, the issue is whether a Fourth Amendment seizure based upon reasonable suspicion can be accomplished within a home or its curtilage. Of course, the concept of a constitutionally-authorized seizure premised upon reasonable suspicion began with *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Terry* addresses the "serious questions concerning the role of the Fourth Amendment in the confrontation <u>on the street</u> between the citizen and the policeman investigating suspicious circumstances." (Emphasis added.) *Id.* The majority opinion does not cite to and I have not found a case which authorizes a reasonable suspicion seizure within a home or its curtilage. To the contrary, "it is a basic principle of Fourth Amendment law that searches and seizures inside a home are presumptively unreasonable." *Payton*, 445 U.S. 573, 586, 100 S.Ct.

1371, 63 L.Ed.2d, citing *Coolidge*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. This is so because "when it comes to the Fourth Amendment, the home is first among equals." *Jardines* at ¶ 6. There are, of course, a number of exceptions (i.e., exigent circumstances) to the requirement that a warrant is necessary to accomplish a search or seizure within a home, but there is not a reasonable suspicion exception to the requirement that a warrant is required to undertake a search or seizure within a home.

{¶ 46} Though, as stated, I agree with the majority opinion's conclusion, based upon the above discussion, I do not agree that the officers' reasonable suspicion that Morrow had committed the criminal conduct being investigated allowed the forced opening of the apartment door.

DONOVAN, J., dissents:

{¶ 47} I dissent. This case is not a typical "knock and advise" nor is it a typical "exigent circumstances" case. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King,* 563 U.S. 452, 469, 131 S.Ct. 1849, 179 L.Ed.2d 453 (2018). Indeed the United States Supreme Court has suggested that, when a police officer approaches the home without a warrant, he has no greater license to remain on the property than a Girl Scout or trick-or-treater. *Jardines* at 8.

{¶ 48} I acknowledge that the United States Supreme Court has held that "where police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *King* at 462.

{¶ 49} However, Officers Evans and Ettinger should not have lingered in the

apartment building (at Morrow's door) even though they knew someone was inside Apt. 3. In my view, the unlawfulness of the officers' conduct herein is beyond debate. Morrow was under no obligation to open the door and/or speak to the officers. Furthermore, the officers should have retreated and/or conducted further lawful investigation or surveillance, as they clearly lacked probable cause for a search warrant initially. They lacked a particularized and objective basis for suspecting Morrow. Their hunch was insufficient.

{¶ 50} The manner in which the officers conducted themselves could be described as being calculated "to cause surprise, fright and confusion." *See Brown v. Illinois*, 422 U.S. 590, 605, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Notably, an individual has the right to keep and bear arms for the defense of self, home and family.

{¶ 51} The officers also could not claim the benefit or exception of an exigency when their unlawful conduct gave rise to the exigent circumstances in the first instance. Although it is widely accepted that law enforcement officers may enter a home without a warrant to render emergency assistance, I would conclude that their deliberate unlawful Fourth Amendment violations cannot create the situation which leads to such a necessity. These officers did not encounter a tumultuous situation at the apartment, they created it. There was no need for "immediate action" when they entered the apartment building. No evidence was adduced that any occupant of Apartment 3 was necessarily the suspect, nor was any evidence adduced that Morrow was attempting to escape or destroy evidence. We must look at the unreasonable and improper investigative tactics that generated/led to this exigency. I cannot say that the shooting of Morrow was sufficiently divorced from the constitutional violation.

**{¶ 52}** I would find the officers' conduct herein sufficiently deliberate and culpable, thus I would reverse.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Jon Paul Rion
Catherine H. Breault
Hon. Dennis J. Adkins